Mr. DeMessis, good morning. Good morning, Your Honor. Mr. DeReggie DeMessis, may I reserve two minutes for rebuttal? Pardon me? May I reserve two minutes for rebuttal? Yes, Your Honor. The petitioner is entitled in this case for relief under 28 U.S.C. 2255 for two reasons. First, the sentence was imposed in violation of the Constitution, and second is there's an otherwise, it's otherwise subject to collateral attack based on the prior convictions that was vacated. I'll focus on the two central issues that were presented in our brief, the ineffective assistance of counsel in the form of a denial of right to testify and the vacature of the prior convictions, conviction and the due diligence requirement. The ineffective assistance of counsel claim was presented in the form of a denial of right to make a defense. The Sixth Amendment, of course, provides for a right to counsel and courts have consistently held that right includes the right to make a defense, and that is solely within the purview of the defendant, of course, with the assistance of an effective counsel. In this case, Mr. Rossetti put forth a claim of coercion in the form of erroneous legal advice in terms of his waiver of right to testify. Courts have recognized three circumstances which give rise to coercion, and one of them is applicable in this case, and it is precisely what happened, which was that the advice from his attorney was so erroneous and insufficient as to allow Mr. Rossetti to make an informed and intelligent waiver of his right to testify. He has filed an extensive affidavit that has corroboration in the record as well as corroboration from his trial counsel who admitted that he erroneously informed Mr. Rossetti that if he had testified, he would have effectively nullified his withdrawal argument. The defense The interesting thing here is the district court judge didn't just find that that wasn't so unreasonable as to create a Strickland problem, but he actually agreed. He said he thought that the advice was essentially correct advice. So how do we deal with that? Yes. I think that is from just based on the record in the affidavit, that is an erroneous conclusion. If you look at what the facts and what the district court judge relied on, he completely ignored the defense's argument, which was that Mr. Rossetti initially agreed to participate in the conspiracy, but then had a change of heart. He changed his mind. He communicated that directly to the co-conspirators. Let me ask you about that. If he did that, in other words, if he had withdrawn and let them know it was off and the decision had been made, he'd just get rid of the, help them get rid of the Tahoe, I think it was. Why were Morlino and Billy at the TRC in the morning where they got arrested? So essentially from his point of view and based on the affidavit and the evidence, it doesn't mean the others were abandoning the plan. Let me ask you about that. If he had told them he's out and withdrew and that he's going to get rid of the van that they needed and wouldn't be there, he and Turner were going to be off, they wouldn't have guns, they wouldn't have scanners, how were Billy and Morlino going to pull off the crime? Again, I think that would be a factual determination a jury has to make whether or not they believe they were going through the plan based on their own agreement or independently of Mr. Rossetti. Doesn't it suggest, doesn't it suggest support the district court because it suggests that the withdrawal defense was so improbable on these facts that to make the withdrawal offense and thereby undercut your other defenses including your entrapment defense, which said you were afraid to say no to these guys? There are two answers to that. First, I agree that a jury could look at it that way, which is that this withdrawal defense is improbable because these other people were there and the minivan was essential to the plan and if he was getting rid of it, they probably would not have been going through it. The other one is maybe they made an alternative plan that he has communicated his withdrawal, he was asked to get rid of the minivan for whatever reason and there are facts that would support that. He actually did not have any weapon in his car, he did not go directly to the garage as previously planned, he actually drove by and was not arrested at the garage. Let me ask you about that because that puzzled me too. If he had withdrawn, why did he drive to TRC, although he didn't go in, but why drive there first? Because he was told he needed to get rid of the minivan, it would be parked on the street. He did not see the minivan parked on the street so he passed by and that was the explanation he gave. Okay, and then after he got to the minivan and left his Honda there, why did he go back towards the TRC? They didn't actually find the minivan, there was a transfer from a car to a Tahoe and they were arrested a mile away. But they were heading back, as I understand it, they were heading back towards the TRC and then turned and were apprehended elsewhere. It's not clear they were heading back, they were arrested a mile away. But the second response to your question is that the law is clear, a defendant can pursue his own defense to his detriment and whether or not the jury would believe his testimony or credit it is immaterial. The lawyer's job is to provide a clear and correct legal advice to empower the defendant to make his own decision as to what defense he's going to put forth, whether it makes sense or not. So what exactly was the bad advice here? The bad advice was that precisely if you testify because of your post with the jury, you are not going to be able to make your own decision. If you testify because of your withdrawal activity, which is agreeing to get rid of the van, you would nullify your withdrawal defense. Now, that is erroneous because the law is clear that direct communication... The withdrawal defense being the theory that he'd withdrawn earlier? Yes, that he withdrew by communicating that he was out, he was asked to at least get rid of the van for them. He averred that he believed getting rid of the van would actually prevent the robbery from going forward, as opposed to facilitating it, and has no connection with furthering the robbery, and therefore, under those circumstances, it would not defeat a withdrawal defense. In fact, it may bolster it. It strikes me that we're not dealing with a situation in which the advice was clearly wrong. It's a matter of judgment as to whether his taking the stand would undermine his withdrawal defense or not. Under the very specific facts known to the defendant and his counsel, his counsel stated that, in hindsight, his advice was wrong. He based that conclusion based on the facts known to him, and based on what the preferred testimony from Mr. Rossetti would have been, that he withdrew from the conspiracy. He was asked to get rid of the van after he withdrew from the conspiracy, and he believed that that was not part of the robbery scheme whatsoever, and in fact, would be inconsistent with it, and that's what he was going to testify. There was also corroboration in the record that he made an arrangement to go back home at 8 a.m. to take his son to work. There's testimony from his son and wife about that. He would also would have been in a position to testify about the predisposition issue. This is an individual who was working 70 to 80 hours a week. He had completely transformed his life for over 10 years. He was gainfully employed and with family. He had a very good job. The predisposition issue would have been addressed had he testified, and there's significant prejudice because not only he wasn't able to put forth before the jury a credible defense of vicarious entrapment, which was part of the defense, but there wasn't really much testimony about that, and the withdrawal defense that would have required him to actually say I withdrew and testify about his communication and also address the predisposition. You say you had a second point. The second point is the vacature of the prior conviction. The judge assigned a trigger point for the due diligence, a one-year requirement. The first sentence and judgment, which dates back to November 22, 2002. At that time, the circuit had the bracket versus U.S. rule, which basically said prior conviction being vacated is not a fact, and defendant was not in a position to come back and address that under 2255 section F4. By assigning a trigger point at a time when the defendant was not in a position to raise the issue, the district court essentially created an illusory trigger point that was not availing. However, in 2005, the Johnson decision came down, and the circuit's law changed. How long did he wait after the Johnson decision to move to vacate? Three years. Why is three years due diligence? The Johnson case says three years is about the time they anticipate would be within a due diligence period. However, there are facts in this case that he had contacted, and there are affidavits from different lawyers. He contacted different lawyers. The record was misplaced in the basement of the East Boston Court. This is a conviction that goes back to 1977, and the defendant, being in custody, did what he could. But going forward, he filed the motion. He addressed it with the court, and it was within the anticipated due diligence period, even though it was a month or two off. What should have been done in this case was at least have an evidentiary hearing on the due diligence issue, which the defendant was not afforded, and by setting the time back to 2002, essentially denied Mr. Rossetti an available defense. I will come back to address your body. Thank you. Thank you. Aditya Bamzai, good morning. Good morning, Your Honor. Thank you, Your Honor, and may it please the Court. Aditya Bamzai on behalf of the United States of America. I'd like to pick up very quickly and address some of the issues that the Court has been interested in this morning. First of all, with respect to ineffective assistance of counsel, I believe that Judge Chiara and Judge Dyke's questions just go to show that Strickland establishes a highly deferential standard under which counsel's decisions at trial are not to be severely second-guessed. On the ineffective assistance question, I'd just like to amplify two quick points from our brief. The first is, Petitioner relies very heavily on this affidavit that his trial counsel has submitted, in which trial counsel concedes that he committed ineffective assistance in various ways. And as the cases that we cited in our brief on page 26, including the Tarver and the Amon case from the 11th and the Second Circuit, demonstrate, the submission of that affidavit is not particularly significant. It's not actually particularly relevant to the ineffective assistance inquiry, and that is because Strickland establishes an objective standard by which to measure counsel's performance. My second point is that, as applied to this case, counsel's advice not to testify at trial was reasonable advice. And in fact, it was good advice under the facts of this case, as we lay out at length in our brief. And there is this quirk where we are trying to delve inside counsel's head as a result of this affidavit that he has filed and said, well, maybe I premised that advice based on this quirk of conspiracy law. But writ large, the advice not to testify was good advice. Now, turning very quickly to the timing question, I'd like to just make a couple of points. The first is that Johnson really establishes the contours for analyzing the 2255F4 issue that's currently before this Court. And that's because in Johnson, the Court had an array of possible dates before it at which it considered an array of possible dates for triggering the due diligence requirement in Section 2255F4. And it selected a date because it believed by that date the significance of inaction on the part of a defendant would be clear. And so between the first date of judgment in this case and the second date of judgment, the date of judgment being the date that Johnson selected as the operative date for 2255F4, between those two dates, it's quite clear by the first date of judgment the significance of inaction on the part of defendant, Mr. Rossetti, was clear. He had been sentenced. His sentence had been enhanced under the ACA. And it had been enhanced under the 1977 Massachusetts conviction. So he should have started taking actions by that date. And I'd like to quickly address Petitioner's what I consider his fallback argument on this issue, which is that he was not obligated to begin exercising due diligence under some years later in 2005, which is when the Court issued its opinion in Johnson. And the linchpin, the premise for that theory is that before 2005, this Court had a precedent bracket under which a state vacater of a prior conviction was not deemed to be a new fact within the meaning of 2255F4. And he believes as a result of that precedent, he would not have had an interest in pursuing vacater in statute had he expediently pursued vacater in state court prior to 2005. He could have included the state vacater as a fact in his original 2255 motion. And had he done so, he would have been timely under 2255F1. And in fact, as I read one of his affidavits, he appears to have understood at the time in 2002, there's a discussion with his lawyer in which they discuss whether or not to seek vacater of the 1977 conviction. And the decision not to seek that vacater is made, but not premised on anything dealing with bracket itself, rather for some other reason. And as Judge Dyke pointed out, even if you were to accept that the 2005 date, contrary to the language of Johnson, even if you were to accept that the 2005 date is the trigger date, the petitioner still waited three years from that date before seeking relief in state court. And Johnson held that a comparable three-year period was too lengthy to qualify as due diligence. Can I ask you as a practical matter, is the government in any way prejudiced by the late filing of this vacater? Well, Your Honor, Congress has established various times. I understand the law. I'm asking you as a practical matter. Is the government in some way prejudiced? Is the case somehow weaker, or evidence lost, or things of that nature because of this late filing? Well, Your Honor, if we were to consider the state vacater issue on the merits, then petitioner would have a claim that his sentence should be reduced by 22 months. So that is the prejudice to the government. But stepping back for just a moment, I think what Your Honor is capturing is that timing rules that are contained in statutes, including in 2255, can sometimes feel technical. But the Court's precedents indicate that Congress established those technical rules in order to discipline what could otherwise be a very unruly process. And just to take this case as an example, we are talking about a 1977 Massachusetts conviction that was vacated decades later. And as far as we can tell from the record, they could for no reason other than the state didn't show up to defend the conviction. So sometimes the state is not in a position to defend and doesn't have an interest in defending that prior conviction. But as the Court said in Johnson, the federal government has a federal interest in federal sentencing enhancements. And therefore, allowing petitioner to evade these requirements that are set forth in 2255 would really tend to undermine the timing rules that Congress has set up. That doesn't seem to have much to do with the timing of the vacater request. Well, Your Honor, if I'm understanding your... I mean, I think Mr. Toey's question was, you know, how are you prejudiced by the delay in terms of loss of evidence or whatever. It doesn't sound as though there was any prejudice. You're just saying that's the rule. Your Honor, you're right, that's the rule. And the way in which we are prejudiced is that there are many of these 2255 motions that are filed, and there needs to be some sort of disciplined process by which to evaluate them. And so you're quite right that the rule can seem a little bit technical, but it is the rule that Congress established. And I have no questions for why Congress may have intended to establish that rule. I thought you were starting to say that the longer someone can wait, the more likely it is that the state will simply default in the vacater action itself. Your Honor, that is the case. We, of course, recognize that under 2255-F4, there will be some class of cases in which a defendant has waited a long time and is nevertheless successfully able to obtain that vacater in state court and can come within the terms of 2255-F4 and use that state vacater. What we're asking before the Court is simply that that class of cases not be expanded beyond the boundaries that Congress created in the 2255 statute. Could you refresh my mind as to what was the grounds for the state vacater? Your Honor, it's not clear to us from the record. The precise page of the appendix record is cited in our brief, and as far as we can tell, it's also discussed in the district court opinion as far as we can tell, the state did not defend the conviction. What was the claim? Oh, what was petitioner's claim? It's not clear to us. It's just there's a pro forma motion to vacate the state conviction that is filed. There appears to be no opposition, and the state trial judge simply enters it. If the Court has no further questions, thank you very much. Thank you. To address your question, Judge Tarullo, I believe the motion was based on a constitutional and substantive procedural argument that there was no knowing and intelligent waiver of right for the plea. I would state that having done a number of these motions, there's always a hearing where the judge makes a finding based on the record and what is submitted of a constitutional defect in the underlying proceeding before a conviction is vacated. And I think there is a presumption of regularity whether the state defends or not. Usually they're done in the presence of a district attorney who may or may not take a position, but there has to be a factual finding by the Court. I would suggest, as in this case, that is regularly done. The argument that the lawyer's advice was sound advice, that was good advice, doesn't really matter when you look at the argument in the context of a right to make a defense. And I think that's the central problem with the way the District Court resolved the issue of ineffective assistance of counsel. The judge resolved it under the Strickland standard looking at whether or not the advice was sound. That is not the proper way of resolving it. When you have a claim of a right to make a defense, the analysis should be not whether it was a sound tactical decision, but did the lawyer provide sufficient information to allow the defendant to make an informed decision. And I would ask the Court to reverse the decision of the District Court. Thank you.